Filed in Open Court
11/18/2025
Skyler B. O'Hara
By M. Deaton
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GENELLE GLACKIN,

    Defendant.

Case No. 23-cr-20048-HLT-10

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney Faiza H. Alhambra, and Genelle Glackin, the defendant, personally and by and through her counsel, Sarah G. Hess, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1.     **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 2 of the Second Superseding Indictment charging a violation of 21 U.S.C. § 841(a)(1), and 841(b)(1)(A)(viii), and Title 18, United States Code, Section 2 that is, possession with intent to distribute 50 grams or more of methamphetamine. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the sentence which may be imposed as to Count 2 of the Second Superseding Indictment to which she has agreed to plead guilty is not less than ten years and no more than life, a $10 million fine, at least 5 years of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States, as agreed.

Ver. 03-01-24

2.  **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Investigators with the ATF and DEA in Kansas City began a drug trafficking investigation in February 2023. Through the investigation, they determined that the HEREDIA-CHANG Drug Trafficking Operation (DTO) was distributing narcotics in the Greater Kansas City Area. ATF and DEA investigators began identifying DTO members in the Kansas City area and tracking their movements. During the investigation, law enforcement utilized various tactics to include physical surveillance, elevated surveillance cameras, and GPS trackers. From February to June 2023, DEA and ATF investigators identified three different narcotics drivers working for the DTO.

Gennelle Glackin resided at 2045 South 42nd Street, Kansas City, Kansas. Sandoval, Ruiz, and Rios-Salazar delivered methamphetamine to Glackin in Kansas City, Kansas. Trackers indicated courier vehicles visited her address approximately 50 times between February 2, 2023, and August 8, 2023.

Messages from Heredia-Chang's phone indicated co-defendant Genelle Glackin sold Heredia-Chang a firearm on July 7, 2022. A series of text messages revealed Glackin told Heredia-Chang the firearm was registered in her name, so it was "clean," and she sent a photograph of a black Taurus pistol with two magazines. She indicated she needed to pick the firearm up from a pawn shop. During the search of the Tremont house, a Taurus firearm matching the photo and serial number was located. An E-trace indicated Glackin purchased the firearm from Metro Pawn on July 7, 2022.

The defendant agrees that the firearms and ammunition listed in the forfeiture section was property used to facilitate and/or property that constitutes proceeds the defendant obtained, directly or indirectly from the commission of the commission of Count 2.

On September 20, 2022, a K-9 alerted to a suspicious package at a FedEx in Kansas City, Missouri. A search warrant was secured, and investigators found approximately 18 pounds of suspected methamphetamine in a package. The package was addressed to an individual with a connection to Gennelle Glackin. In 2023, investigators learned from April Parks that the delivery came from Heredia-Chang. The individual who accepted the package during a controlled delivery told investigators it was delivered to her for Gennelle Glackin. After Heredia-Chang was arrested in September 2023, messages on his phone between him and Glackin corroborated he sent the package to Glackin's address for pickup by Heredia-Chang's driver.

Heredia-Chang sent a second box to Glackin's address on 42nd Street. Glackin confirmed to Heredia-Chang that the box arrived.

On February 2, 2023, an Undercover Officer (UC) purchased ½ pound of methamphetamine from Steven Crawford. When the UC arrived at Crawford's residence, Crawford stated they had to go pick up the methamphetamine. They traveled together to the residence of Gennelle Glackin, 2045 South 42nd Street in Kansas City, Kansas. After receiving the methamphetamine from a red Chevy Silverado registered to Heredia-Chang at Glackin's

2

residence, the UC dropped Crawford off at his residence. The methamphetamine was tested a lab and confirmed to be 222.74 net grams, 99.5% pure (221.6 grams of actual methamphetamine.).

On February 28, 2023, investigators conducted surveillance. They observed Victor Sandoval, driving a red truck, leave the Tremont house and make short stops at other residences. Two of the residences he stopped briefly at were those of Gennelle Glackin and Robert Riley.

On July 19, 2023, Glackin requested 3.5 "K" (kilograms) from Heredia-Chang. A call followed discussing prices and then Glackin asked for "1 right now." Shortly after, Rios-Salazar left 5610 East 39th Terrace and drove to Glackin's residence to deliver the 1 kilogram of methamphetamine.

On July 20, 2023, Glackin asked for another "K" to be delivered to her sister's house at 343 North 5th Street in Kansas City, Kansas. She then followed up saying she needed a "K" and a "QP" (quarter pound) of methamphetamine. Glackin and Domnick were observed outside the residence. Shortly after, Rios-Salazar was observed exiting the Tremont house. Domnick messaged Heredia-Chang that she was with "GiGi" and asked when he would get there. Rios-Salazar arrived at 343 North 5th Street and Glackin entered the silver pick up. She then exited the truck with a white grocery bag.

On July 22, 2023, Domnick ordered 1 ounce from Heredia-Chang to be dropped off at Glackin's residence. On August 4, 2023, Domnick asked Heredia-Chang for 1 pound of methamphetamine at Glackin's residence. A truck arrived and delivered the methamphetamine.

2045 South 42nd Street in Kansas City, Kansas, was searched on August 8, 2023. Gennelle Glackin was arrested in the residence. Tammy Domnick arrived after the search. Investigators located the following: 21.76 grams of methamphetamine located in the master bedroom and a glass methamphetamine pipe. The methamphetamine was intended for distribution.

The drug amount attributed to the defendant is at least 10 kilograms of methamphetamine and 8 kilograms of methamphetamine (actual) consisting of the following transactions:

- 18 pounds of meth found at apartment in KCK in September 2022
- February 2nd, 2023- 4 ounces on UC Buy
- April 26, 2023- ¼ pound
- May 16, 2023- 6 ounces
- June 3, 2023- 1 pound
- June 12, 2023- 4 ounces
- June 15, 2023- 1 pound
- June 26, 2023- 4 ounces
- July 10, 2023- 2 pounds on T-3
- July 12, 2023- 10 ounces on T-3
- July 19, 2023- 1 kilogram
- July 20, 2023- 1 kilogram and ¼ pound
- July 21, 2023- 1 pound

- July 22, 2023- 2 kilograms
- July 24, 2023- 2 kilograms and ¼ pound
- August 4, 2023- 1 kilogram
- August 6, 2023- 1 kilogram
- August 8, 2023- 21.76 grams

3. **Application of the Sentencing Guidelines.** The parties understand that the Court will apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and may impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

   (a) to dismiss the remaining counts of Indictment (doc. 11), Superseding Indictment (Doc. 30), and Second Superseding Indictment (doc. 229) as to the defendant at the time of sentencing;

(b) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Second Superseding Indictment;

(c) to recommend that the sentence in this case run concurrent to the sentence the defendant receives in case no. 23-cr-40044-DDC-04;

(d) to recommend a sentence at the low end of the applicable Guideline range, and to allow the defendant to reserve the right to request a downward departure and/or a variance; and

(e) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if her offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds she qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because she timely notified the government of her intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to her involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if she has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, she understands and agrees that all statements she made, any testimony she gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements she made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence she will receive.

7. **Forfeiture of Assets.** The defendant knowingly and voluntarily agrees and consents:

to forfeit, via any administrative or judicial proceeding, all assets listed in the charging document, Bill of Particulars, and/or seized during the investigation of this case, that are directly and indirectly subject to forfeiture to the United States, including but not limited to, the following specific property:

(a) a Taurus Model PT1911AR, .38 Super caliber pistol with Magazine, bearing serial number LBY42874;
(b) a Colt Model Mustang, .380 caliber pistol with magazine, bearing serial number MP16072 and six rounds of ammunition;
(c) a F.N. Herstal Model Five-seven, 57 caliber, pistol bearing serial number 386388881;
(d) a F.N. Herstal Model Five-seven, 57 caliber, pistol bearing serial number 386372657;
(e) a Colt Model 1911 JAL Dark Horse, .38 caliber, pistol bearing serial number GV041292;
(f) a PlumCrazy model AR15, .556 caliber rifle, bearing serial number Z00104;
(g) approximately $8,100.00 as substitute res for 2019 Volkswagen Jetta, VIN: 3VW6T7BU0KM236946;
(h) approximately $13,600.00 as substitute res for 2016 Cadillac Escalade, VIN: 1GYS4CKJ8GR407486;

(i) approximately $13,800.00 as substitute res for 2001 Ford F150 SVT Lightning Truck, VIN: 2FTZF07381CA99389;
(j) approximately $11,300.00 as substitute res for 2016 Dodge Charger SRT, VIN: 2C3CDXEJ1GH339758;
(k) approximately $5,950.00 as substitute res for 2015 Infiniti Q50, VIN: JN1BV7AP1FM352247;
(l) approximately $85,500.00 as substitute res for 2021 Ford F150 Shelby Truck, VIN: 1FTMF1E5XMKE77569;
(m) approximately $12,000.00 as substitute res for 2020 Kia Stinger, VIN: KNAE15LA1L6083263;
(n) approximately $18,900.00 as substitute res for 2016 Tesla Model X, VIN: 5YJXCBE42GF000347;
(o) ammunition seized in connection with this investigation;
(p) United States currency seized on August 8, 2023, including but not limited to $129,880.00 and $96,054.00; and
(q) A forfeiture money judgment imposed against each defendant in an amount that equals the amount of gross proceeds obtained or derived by that defendant.

The defendant agrees that this property was property used to facilitate; and property that constitutes proceeds the defendant obtained, directly or indirectly from the commission of the commission of Count 2. The defendant knowingly and voluntarily waives her right to a jury trial regarding the forfeiture of property, and voluntarily waives all constitutional, legal and equitable defenses regarding the forfeiture of property and withdraws any administrative claim or petition for remission regarding the property. The defendant acknowledges and agrees that the forfeiture of this property shall not be deemed an alteration of his sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Preliminary Order of Forfeiture, and agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

8. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

7

(a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

>   Clerk, U.S. District Court
>   401 N. Market, Room 204
>   Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c) Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d) Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e) Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f) Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g) All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h) Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j) If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k) Defendant understands she has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l) Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

9. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which she does not agree, she will not be permitted to withdraw her guilty plea.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against her at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during her period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords her the right to appeal the conviction and sentence imposed. The defendant also waives

9

any right to challenge her sentence, or the manner in which it was determined, or otherwise attempt to modify or change her sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12.     **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13.     **Full Disclosure by United States.**  The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning her background, character, and conduct, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she is pleading guilty. The United States may respond to comments she or her attorney makes, or to positions she or her attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves

its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only her and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with her attorney and she is fully satisfied with the advice and representation her attorney provided. Further, the defendant acknowledges that she has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that she is entering into this Plea Agreement and is pleading guilty because she is guilty. She further acknowledges that she is entering her guilty plea freely, voluntarily, and knowingly.


/s/ Faiza H. Alhambra                         Date:  8/4/2025
Faiza H. Alhambra
Assistant United States Attorney


s/ D. Christopher Oakley                      Date:  8.4.2025
D. Christopher Oakley
Assistant United States Attorney
Supervisor

_____  Date: 11/18/25
Genelle Glackin
Defendant

_____  Date: 11/18/25
Sarah G. Hess
Sandage Law, LLC
1600 Genessee Street, Suite 662
Kansas City, MO 64102
Counsel for defendant